STATE of Wisconsin EX REL. Jerome W. TINTI,
Petitioner.

v.

CIRCUIT COURT FOR WAUKESHA COUNTY,
Branch 2, the Honorable Mark S. Gempeler, Presiding,
and State of Wisconsin, Respondents.

Court of Appeals

*No. 90-2145-W. Oral argument November 12, 1990.—Decided
December 19, 1990.*

(Also reported in 464 N.W.2d 853.)

For the petitioner, there was a petition for supervisory writ and oral argument by *Leonard Schulz* of *Law Offices of Leonard W. Schulz* of Big Bend.

For the respondent, there was a response to the petition for supervisory writ and oral argument by *Kevin M. Osborne,* assistant district attorney for Waukesha county.

Before Nettesheim, P.J., Brown and Scott, JJ.

NETTESHEIM, P.J.   This is an original action in prohibition seeking to bar the Honorable Mark S. Gempeler from presiding in any further proceedings in an underlying criminal prosecution against the petitioner, Jerome W. Tinti. Judge Gempeler determined that a substitution of judge filed by Tinti's counsel was not timely under sec. 971.20(4), Stats. We disagree. Therefore, we grant Tinti's petition for a writ of prohibition.

## PROCEDURAL FACTS OF THE CASE

The facts are lengthy, but simple and undisputed.[1] The state charged Tinti with four misdemeanor counts of causing injury by the intoxicated operation of a motor vehicle contrary to sec. 346.63(2)(a)1, Stats. Tinti was served with the summons and complaint. The summons directed Tinti to appear before Waukesha County Judicial Court Commissioner Gerald T. Janis on August 20, 1990. A heading across the top of the summons and complaint identifies the forum as the circuit court, "Criminal-Traffic Division." No other information in either the summons or complaint advises as to any specific branch of the circuit court to which the matter would be assigned following Tinti's initial appearance.

In response to the summons, Tinti appeared before Commissioner Janis with his counsel, Attorney Leonard Schulz, a veteran Waukesha county attorney. Attorney

---

[1]The facts are based upon the original petition and response filed in this action, additional material presented without objection by both Tinti and the state at oral argument, and the underlying action which we have judicially noticed without objection from either party.

785

Schulz waived a formal reading of the complaint. However, Commissioner Janis did advise Tinti of the charges and the possible penalties. Attorney Schulz entered a not guilty plea and requested a jury trial. Commissioner Janis directed that the matter be set for a pretrial conference. The clerk announced the pretrial date and further advised that the pretrial was "in Branch 2." Judge Gempeler presides in Branch 2 of the Waukesha county circuit court.[2] Commissioner Janis then ordered a signature bond as bail.

As Attorney Schulz was walking to the clerk of courts office to tend to the signature bond, he passed Judge Gempeler's courtroom and noticed that the sign on the door advised that Judge Gempeler presided in Branch 2. After conferring with his client, Attorney Schulz filed a substitution of judge against Judge Gempeler on August 24, 1990—four days after the initial appearance before Commissioner Janis. Subsequently, Attorney Schulz received a copy of an "Application for Judicial Assignment" which carried Judge Gempeler's handwritten entry that the substitution request was "Denied as untimely." This form carried Judge Gempeler's handwritten initials and the date of August 31, 1990.

Thereafter, Attorney Schulz wrote to Judge Gempeler seeking reconsideration of the substitution request in light of the court of appeals decision in *State ex rel. Tessmer v. Circuit Court Branch III,* 123 Wis. 2d 439, 367 N.W.2d 235 (Ct. App. 1985). The record and information provided to us reveal no response by Judge Gempeler to the reconsideration request.

[2]Waukesha county has twelve branches of circuit court.

The procedures in the criminal/traffic division of the Waukesha county circuit courts assign cases to a specific judge based on a monthly intake system. Four judges presently serve in the division.

Initial appearances in criminal/traffic cases are before a judicial court commissioner. The case is then assigned to the appropriate judge for any necessary further proceedings. The date of the initial appearance determines which judge is assigned. Under this system, Judge Gempeler was the intake judge for August 1990. Thus, Tinti's case was assigned to Judge Gempeler. These procedures are not embodied in any published or unpublished rule of court or other equivalent order or directive.[3] However, the affidavit of Cynthia Ernst, Waukesha County Clerk of Courts, states that the procedures for judicial assignment are readily ascertainable through inquiry of court personnel or by examining the court file which bears the stamped name of the judge to whom the matter is assigned.

## TIMELINESS OF THE SUBSTITUTION REQUEST

Section 971.20(4), Stats., provides:

**Substitution Of Trial Judge Originally Assigned.** A written request for the substitution of a different judge for the judge originally assigned to the trial of the action may be filed with the clerk

---

[3]The parties have provided us with a copy of a September 22, 1980 order of then Chief Judge Harold J. Wollenzien which implemented the intake system. This order, however, was not published. More importantly, the three judges then governed by the order are not the four judges who presently constitute the criminal/traffic division in Waukesha county.

before making any motions to the trial court and before arraignment.

Section 971.05, Stats., provides that a misdemeanor arraignment includes: (1) an open court proceeding; (2) advising the defendant of the right to counsel; (3) a reading of the complaint unless the defendant waives the reading; and (4) the defendant's plea unless a motion which requires determination before plea is filed.

Here, Tinti's initial appearance before Commissioner Janis satisfied all ingredients of an arraignment. Therefore, if the timeliness of Tinti's substitution is measured only by the exact wording of the substitution statute, Judge Gempeler correctly ruled that the request was too late because the statute requires the substitution request be filed "before arraignment." Section 971.20(4), Stats.

In both *Tessmer* and *Baldwin v. State,* 62 Wis. 2d 521, 215 N.W.2d 541 (1974), the filing deadline of the substitution statute was relaxed where the judicial assignment system did not adequately advise, *prior to arraignment,* of the judge to whom the case was to be assigned for trial.

Tessmer appeared without counsel before a court commissioner in response to a uniform traffic citation which identified the circuit court forum as "T & M" (traffic and misdemeanor). Tessmer pled not guilty and was given written notice of a pretrial date "in branch number III." *Tessmer,* 123 Wis. 2d at 440–41, 367 N.W.2d at 235. Later, Tessmer retained counsel who, seven days after the initial appearance, filed a substitution request against the circuit judge presiding in branch III. *Id.* at 441, 367 N.W.2d at 235–36. The court of appeals concluded that the substitution request was timely filed. The court stated that the substitution stat-

ute should be applied in a reasonable manner to give effect to the legislative intent. *Id.* at 442, 367 N.W.2d at 236. "[T]he key to the statutory right of substitution [is] the defendant's ability to exercise his right of substitution *intelligently.*" *Id.* (quoting *Clark v. State,* 92 Wis. 2d 617, 628, 286 N.W.2d 344, 348 (1979) (emphasis in *Tessmer*)). Thus, we held that Tessmer's substitution request was timely filed.

In *Baldwin,* following arraignment, the original judge disqualified himself when he later rejected a proposed plea negotiation. Baldwin's case was then assigned to another judge. *Baldwin,* 62 Wis. 2d at 527–28, 215 N.W.2d at 544. The supreme court held that the arraignment was not completed until the original plea of not guilty was confirmed before the new judge and that a substitution request filed at that latter time—some thirty-five days after the assignment—would have been timely. *See id.* at 530, 215 N.W.2d at 545. The supreme court noted that the substitution statute, sec. 971.20, Stats., does not operate smoothly where "the cases in which nonguilty pleas are entered are assigned for trial to other judges." *Id.* at 529, 215 N.W.2d at 545. We echoed this language in *Tessmer. Tessmer,* 123 Wis. 2d at 443, 367 N.W.2d at 236.

██

We construe the law under *Tessmer* and *Baldwin* to be this: where the initial appearance is conducted before the judge assigned to hear the matter, a strict application of the substitution statute's filing deadline is appropriate. *See Baldwin* 62 Wis. 2d at 529, 215 N.W.2d at 545. However, where an intake system does not provide adequate notice of the assigned judge in advance of arraignment, the statute's filing deadlines are relaxed in order to allow a defendant to intelligently exercise the right of substitution. *See Tessmer,* 123 Wis. 2d at 443, 367

N.W.2d at 236–37; *Baldwin,* at 529, 215 N.W.2d at 545–46.

Here we deal with the latter situation—an intake system which does not provide adequate notice in advance of arraignment of the assigned trial judge. Therefore, under the *Tessmer/Baldwin* rationale, the filing deadline of the statute must be relaxed to allow for an intelligent opportunity to exercise the right of substitution.

■

The state contends, however, that we should hold *Tessmer* to cases involving unrepresented defendants.[4] In support, the state cites to the clerk of courts' affidavit that the procedures for judicial assignment, although not formally documented, can nonetheless be easily ascertained by informal inquiry of court personnel or by examining the court file. This argument is tempting because: (1) it creates a bright-line rule in cases distinguishing between represented and unrepresented defendants; (2) attorneys presumably are hired for their knowledge and expertise in these matters; and (3) the facts of this case strongly suggest that Attorney Schulz should have inquired prior to the arraignment about the identity of the assigned judge.

However, if we adopt a bright-line rule, we must be mindful that such will govern not only this case but also future cases where the ability of the lawyer to identify the assigned judge may not be as clear as in this case. Under such a rule, an attorney from another jurisdiction, unfamiliar with the intricacies of the Waukesha county intake system, would be held to rely upon the informal

---

[4]Although the state did not address *Baldwin v. State,* 62 Wis. 2d 521, 215 N.W.2d 541 (1974), the state's argument must also travel to *Baldwin.* Unfortunately, *Baldwin* does not advise whether the defendant was represented by counsel.

advice of a court employee or the stamp on the court file as the basis for filing a prearraignment substitution request. This would be so even if the attorney had checked the published and unpublished rules of court for Waukesha county in an effort to learn the identity of the assigned judge. This, we conclude, is not a proper basis upon which an attorney should premise a substitution request.

We conclude that the resolution of this issue does not depend on whether the defendant is represented by counsel. Regardless of representation, we conclude that the law requires more than the informal opportunity for pre-arraignment notice of the assigned judge given under the Waukesha county intake system. Thus, Tinti cannot be held to the strict filing deadline of the substitution statute.

■

The state next argues that even if the substitution statute's filing deadline is relaxed, Tinti's substitution request was still untimely in this case. We disagree. Upon learning of Judge Gempeler's assignment to the case, Attorney Schulz consulted with his client and then filed the substitution request four days after the arraignment. This action was taken well within the limits already recognized as timely in *Tessmer* (seven days) and *Baldwin* (thirty-five days). We conclude that Tinti's substitution request was timely filed.

■

We acknowledge that the substitution statute, sec. 971.20, Stats., is under siege in many quarters and has been the subject of much criticism and controversy. We also acknowledge what our supreme court has already said—the substitution statute can be invoked for reasons not related to the goal of preserving fair trial or the appearance of fair trial, *State v. Holmes,* 106 Wis. 2d 31,

59, 315 N.W.2d 703, 716 (1982), with resulting ineffi-ciency and inconvenience. *Id.* at 62, 67, 315 N.W.2d at 717–18, 720. Nonetheless, the supreme court has declared the statute constitutional as a proper exercise of the legislative function and not violative of the separa-tion of powers doctrine. *Id.* at 74, 315 N.W.2d at 724. As the supreme court has noted, it is for the legislature to balance the fairness goals of the substitution statute against the statute's adverse effects upon the courts. *See id.* Any correction in this balance is also for the legislature.

*By the Court.*—Writ granted.